RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  8/5/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

CARL PRICE                                    CIVIL ACTION NO.: 3:14-cv-0158

VERSUS
                                              JUDGE ROBERT JAMES
R.N. SONYA SMITH, ET AL.                      MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is a motion to dismiss (Doc. 12) referred to me by the district judge for report and recommendation.

Background

On or about February 4, 2014, counsel for the plaintiff, Carl Price ("Price"), filed a civil rights complaint pursuant to 28 U.S.C. §1983 against Sonya Smith, R.N., Dana Lynn, R.N. (collectively "the nurses"), Chad Lee, Warden of the Franklin Parish Detention Center ("Warden Lee") and Kevin W. Cobb, Sheriff of Franklin Parish ("Sheriff Cobb") in their individual capacities. Counsel, on behalf of Price, claimed the defendants were deliberately indifferent to Price's medical needs.

In January, 2013, Price, a Louisiana Department of Public Safety and Corrections ("DOC") inmate, was housed at the Franklin Parish Detention Center. He made a "routine 'sick call' complaining about a 'pinched hole' in his foot" and "[t]he Defendant nurses"[1] diagnosed the

---

[1] Counsel failed to set forth which defendant made the diagnosis of athlete's foot. When the lack of specificity was noted by the defendants in their motion to dismiss, Price's attorney responded by editing the allegation to "The Defendant nurses diagnosed and advised…". (Doc. 14, p. 2).

ailment as athlete's foot (Doc. 2, p.6). "The Defendant nurses" directed Price to wash and dry his foot and apply a "medical cream". The nurses did not contact or advise the on call doctor of Price's foot ailment or their diagnosis. (Id.; Doc. 14, p.2). Price "continued to make multiple repetitive complaints when his foot did not improve and became worse". (Id.). The nurses continued to provide "little to no treatment" and again failed to "summons or advise a doctor." Id.

By March, 2013, Price could no longer walk so Warden Lee ordered Price be housed in lock down where his meals could be delivered. Again, the nurses did not call or consult a doctor and they provided little to no treatment until later in the month when Price's "foot began to have a foul odor along with the severe pain and bleeding." (Id. p.7). Price was sent from lockdown to Winnsboro Medical Clinic where Dr. Charles Reed ("Dr. Reed") "expressed anger, surprise and concern for the delay in treatment, diagnosed gangrene, prescribed antibiotics, pain relief and follow up." (Id.). At the follow up appointment, Dr. Reed advised he would refer Price to a specialist to try to save the foot as "Defendants had waited too late and there was nothing he could do." (Id.).

Approximately one week later, Price was transported to LSU Medical Center in Monroe where he was again diagnosed with gangrene and given antibiotics. Price was also scheduled for surgery but the DOC moved him to Elaine Hunt Correctional Complex ("EHCC") prior to that date.

"The medical staff at EHCC took immediate measures and transferred Carl Price to New Orleans where he was again diagnosed with the gangrene and scheduled for surgery." (Id.). The entire length of his leg was cut open to improve circulation but his condition "deteriorated such that a toe fell off of his foot." (Id. p.8). Ultimately, Price underwent an operation in December, 2013 during which his toes were amputated. To date, he receives treatment and remains in considerable pain.

Price argues the "Defendants were well aware that [he] had a serious medical condition and that he needed to go to the emergency room immediately, but they refused to send him or authorize the same." (Id. p.9). Their actions and inactions were in violation of the "La. DOC and Franklin Parish medical polic[ies] and practice[s] in place pertaining to [m]edical [c]are available to inmates." (Id.). Specifically, Louisiana Administrative Code Title 22, Part III §2909, entitled "Medical and Health Care". "Defendants exhibited and acted in a manner that was wanton or reckless disregard with malice or willfulness to cause injury and violate constitutional rights of an inmate confined to prison."

Accordingly, the instant lawsuit was filed. Federal civil rights claims for deliberate indifference to medical care pursuant to the Eighth Amendment[2] and Louisiana state law claims for negligence were

---

[2]  Counsel for Price also alleged violation of the 4th and 14th Amendments; however, the allegations in the complaint do not give rise to such claims. The Fourth Amendment prohibits unreasonable searches and seizures and none of the facts give rise, or could give rise, to such a claim. Additionally, a claim for violation of the Fourteenth Amendment due to deliberate indifference should be brought by prison detainees, not prison inmates.

asserted against the nurses and Warden Lee and a Louisiana law claim of *respondeat superior* was asserted against Sheriff Cobb.

Defendants responded to the complaint by filing of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and they asserted the affirmative defense of qualified immunity applies to each of them.

## Law and Analysis

### Motion to Dismiss

In considering a motion to dismiss, the court must assume the truth of factual allegations in the complaint and liberally construe them in favor of the plaintiff. A motion to dismiss for failure to state a claim admits the facts alleged in the complaint but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d 198, 203 (5th Cir.1995). While a complaint sought to be dismissed under Federal Rule of Civil Procedure 12(b)(6) does not need detailed factual allegations, a plaintiff must provide more than conclusions or speculations. A formulaic recitation of the elements of a cause of action will not suffice. In other words, plaintiff must make a showing rather than a blanket assertion of entitlement to relief. Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

In the instant case, Price must demonstrate that the defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by engaging in conduct which demonstrates deliberate indifference to his serious medical needs, constituting an unnecessary and wanton infliction of pain. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97 (1976); McCormick v. Stalder,

105 F.3d 1059, 1061 (5th Cir.1997); Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999).

> A prison official acts with deliberate indifference "only if [(A)] he knows that the inmate faces a substantial risk of serious harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" A showing of deliberate indifference requires prisoners to submit evidence that prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." "Deliberate indifference 'is an extremely high standard to meet."

Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)(internal footnotes and citations omitted).

Price contends the nurses were deliberately indifferent because they misdiagnosed his "serious infection" as athlete's foot in January, 2013, "did not summons [sic] or call a doctor", provided "little to no treatment", and allowed the condition of his foot to deteriorate despite "complain[ing] over and over to the "Defendant Nurses" for approximately three months.  He further contends the nurses and Warden Lee knew about his serious medical condition but failed to send him to the emergency room despite his requests.

The allegations in Price's complaint and opposition set forth the following facts regarding the condition of his foot:  he complained of a "pinched hole" in January, continued to complain because his foot was not improving and, in fact, was getting worse, could no longer walk on it as of March and began noticing symptoms of gangrene in late

March.  Price does not allege the nurses refused to treat him or ignored his complaints during this time.  Rather, he states they did not call a doctor, the treatment he received was minimal at best and he was not transported to the emergency room for care despite his repeated requests.  These allegations amount to a disagreement with medical care and/or negligence, not deliberate indifference.

Price also contends Warden Lee knew about his serious medical condition but would not transport or authorize his transport to an emergency room for medical care.  There is no doubt that Warden Lee knew about the fact Price could not walk on his foot as it was the warden to authorized Price's transfer to lock down so his meals could be delivered.  However, Price's allegation that the warden refused to transfer him or authorize transfer to the emergency room for care amount to nothing more than a disagreement with treatment.  The majority of Price's allegations do not establish that a lay person would recognize that the condition of his foot presented a serious medical condition.  It was not until late March when the generally recognized symptoms of gangrene presented that one would recognize a serious medical condition.

Once the symptoms presented, Price acknowledges he was transferred to Winnsboro Medical Clinic for treatment.  While Dr. Reed advised the infection was too advanced for him to render effective treatment, the statement evidences a misdiagnosis by and negligence on the part of the medical staff.  It does not show that the delay was deliberate or that the serious medical condition was so obvious that

the medical staff should have understood medical intervention was necessary.

As there are no factual allegations that the defendants ignored Price's complaints, refused to treat him, wanted harm to come to him or otherwise acted in a manner which showed they were deliberately disregarding his serious medical needs, his claims of a violation of the Eighth Amendment should be dismissed with prejudice.

Affirmative Defense of Qualified Immunity

Qualified immunity is an affirmative defense which should be raised in the first responsive pleading and the defendants have done so in their motion to dismiss. Simmons v. Kolodzik, 159 F.3d 1357 (5th Cir.1998); Fed.R.Civ.P. rule 8(c). The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995), cert. den. 516 U.S. 1084 (1996); Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir.2001), citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir.1992). Once the defense is raised, the burden shifts to the plaintiff but all inferences are still drawn in favor of the plaintiff. Brown v. Callahan, 623 F.3d 249, 253 (5th Cir.2010)(citations omitted).

Determining whether qualified immunity is warranted depends upon satisfaction of two factors: whether the plaintiff's constitutional right was violated, and whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident. Hare v. City of Corinth, 135 F.3d 32, 325 (5th

Cir.1998)(citations omitted). Price did not allege a violation of his clearly established right to be free from deliberate indifference to his serious medical needs. However, for the sake of a thorough analysis, I will assume a violation was stated and determine whether the conduct of the defendants was objectively reasonable in light of the facts and circumstances confronting them. See, Brown, 623 F.3d at 253, citing Graham v. Connor, 490 U.S. 386, 396-97 (1989).

Objective reasonableness is a question of law for the court and the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Id. at 328. Qualified immunity will not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of the conduct. Douthit v. Jones, 619 F.2d 527, 533 (5th Cir.1980). A party seeking to avoid a qualified immunity defense must allege facts sufficient to the defendant either actually intended to do harm or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. Id.

Again, Price failed to assert a single allegation that any of the defendants intended to cause him harm. He also failed to allege that prior to late March, the defendants knew or had any reason to know his condition was anything other than athlete's foot. With the benefit of hindsight, it is evident the nurses likely misdiagnosed his foot condition; however, the reasonableness of a defendant's actions are not considered with the benefit of hindsight. Whether the conduct was substantially certain to result in harm is determined by examining

what the defendant knew at the time and until Price's foot began to smell, bleed and cause him pain, no one knew a serious infection existed. Thus, the treatment he received until that time was reasonable under the circumstances as was the treatment he received thereafter.

Accordingly, the nurses and Warden Lee are entitled to qualified immunity and the federal civil rights claims against them should be dismissed with prejudice.

Supplemental State Law Claims

Once a court dismisses all of the plaintiff's federal claims, it may then decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. §1367(c)(3). In fact, the Fifth Circuit has consistently held "the general rule is to dismiss any pendent claims." Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir.2009), citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir.1989). Accordingly, plaintiffs state law tort claims should be dismissed without prejudice so he may refile them in the appropriate state court.

Conclusion

Based on the foregoing,

IT IS RECOMMENDED that the defendants' motion to dismiss for failure to state a claim (Doc. 12) be GRANTED.

IT IS FURTHER RECOMMENDED that all federal claims against defendants Smith, Lynn and Warden Lee be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that all of Price's state law claims against all of the defendants be DISMISSED without prejudice.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 4th day of August, 2014.

James D. Kirk
UNITED STATES MAGISTRATE JUDGE