UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CARL PRICE | CIVIL ACTION NO. 14-0158 |
| VERSUS | JUDGE ROBERT G. JAMES |
| R.N. SONYA SMITH, ET AL. | MAG. JUDGE JAMES D. KIRK |

RULING

This is a civil rights action brought pursuant to 28 U.S.C. § 1983 by Plaintiff Carl Price ("Price"), a prisoner in the Franklin Parish Detention Center. Price claims that Defendants were deliberately indifferent to his medical needs, which resulted in his foot being partially amputated.

Pending before the Court is Defendants' Motion to Dismiss. [Doc. No. 12]. On August 5, 2014, Magistrate Judge Kirk issued a Report and Recommendation [Doc. No. 27] recommending that the Court grant the motion and dismiss Price's claims. Price filed an objection to the Report and Recommendation [Doc. No. 31], Defendants filed a Response [Doc. No. 35], and Price filed a Reply to Defendants' Response, together with an additional affidavit. [Doc. No. 38].

The Court construes Price's additional affidavit as a motion to amend his Complaint and GRANTS the motion to amend.

After consideration of the amendment and for the following reasons, the Court DECLINES TO ADOPT the Magistrate Judge's Report and Recommendation and DENIES Defendants' Motion to Dismiss.

I.  FACTS AND PROCEDURAL HISTORY

On February 4, 2014, Price filed the instant action against Defendants Sonya Smith, R.N.,

and Dana Lynn, R.N. (collectively "the nurses"); Chad Lee, Warden of the Franklin Parish Detention Center ("Warden Lee"); and Kevin W. Cobb, Sheriff of Franklin Parish ("Sheriff Cobb") in their individual capacities, alleging that they were deliberately indifferent to his medical needs.

In or around March of 2013,[1] Price made a "routine sick call" complaining about a "pinched hole" in his foot. [Doc. No. 2, p. 6]. The nurses diagnosed the ailment as athlete's foot. *Id.* at p. 6. Price was instructed to wash and dry his foot and apply medical cream, but the nurses did not report Price's foot ailment to the on-call doctor for diagnosis. [Doc. No. 14, p. 2]. Price "continued to make repetitive complaints when his foot did not improve," but the nurses provided "little or no treatment" and again failed to summon a doctor. *Id*.

In the middle of May, Price was sent to Dr. Charles Reed, who "expressed anger, surprise, and concern for the delay in treatment, diagnosed gangrene, prescribed antibiotics, pain relief, and follow up." *Id*. At the follow-up appointment, Dr. Reed advised that he would refer Price to a specialist to try to save the foot as "Defendants had waited too late and there was nothing he could do." *Id.* at p. 7. Approximately one week later, Price was transported to LSU Medical Center in Monroe where he was again diagnosed with gangrene and given antibiotics. Price was also scheduled for surgery, but the Department of Corrections ("DOC") moved him to Elaine Hunt Correctional Complex ("EHCC") prior to that date.

The medical staff at EHCC took immediate measures and transferred Price to New Orleans where he was again diagnosed with gangrene and was scheduled for surgery. The entire length of his leg was cut open to improve circulation but his condition "deteriorated such that a toe fell off his

---

[1] Price's Complaint alleges that he initially contacted the nurses in January of 2013, while his subsequent affidavit indicates that this occurred in March of 2013.

foot." [Doc. No. 14, p. 8]. Ultimately, Price underwent an operation in December of 2013 during which the remaining toes on his right foot were amputated.

Price claims that Defendants' actions constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

The Magistrate Judge, in his August 5, 2014 Report and Recommendation, found that Price had alleged insufficient facts to overcome dismissal. Specifically, the Magistrate Judge determined that Price's allegations amounted to "disagreement with medical care and/or negligence, not deliberate indifference." [Doc. No. 27, p. 6].

The Magistrate Judge reasoned that a lay person would not have recognized "that the condition of his foot presented a serious medical condition. It was not until late March when the generally recognized symptoms of gangrene presented that one would recognize serious medical condition." *Id.* The Report and Recommendation highlighted that, under the facts alleged in the Complaint and subsequent filings thereto, once Price's symptoms manifested, he was transferred to Winnsboro Medical Center for treatment. Moreover, regarding Dr. Reed's advisement that the "infection was too advanced for him to render effective treatment," the Magistrate Judge determined that this statement evidenced merely a "misdiagnosis by and negligence on the part of the medical staff--not that the delay was deliberate or that the serious medical condition was so obvious that the medical staff should have understood medical intervention was necessary." *Id.* at 6-7.

After determining that Warden Lee and the nurses were entitled to qualified immunity, the Magistrate Judge also recommended that this Court dismiss the claims against them in their individual capacities. Because the Magistrate Judge recommended that all of Price's federal claims be dismissed, he also recommended that this Court dismiss all of Price's supplemental state law claims,

without prejudice, so that Price could re-file in the appropriate state court.

In his reply to Defendants' response to his objection to the Magistrate Judge's Report and Recommendation, Price attached an affidavit that differs in several respects from the allegations that were presented to the Magistrate Judge. The affidavit alleges the following additional facts:

- That beginning in or around March of 2013, Price repeatedly asked the nurses to get a doctor and to speak to the Warden about his condition, but that his requests were refused. [Doc. No. 38, Exh. 1, p. 2].

- That the "redness and swelling began to spread to beyond the toe to other parts of the foot and that [Price] again requested to see a doctor for antibiotics," but his request was refused. *Id.*

- That he "wrote on a piece of paper almost every morning his request to see a doctor." *Id.* at 3. He avers that he would give the slip to a deputy, who would then turn it over to the nurses. Price avers that he gave several of these slips to Lieutenant "Bust-a-gut," but that the Lieutenant told him that he "was bringing too many [slips] and that [he could not] be making requests everyday." *Id.*

- That the nurses "became aggravated with the multiple requests to see a doctor and threatened to place [Price] on lockdown. They told [him] that [he] could not see a doctor, and if [he] kept it up, [he] was going back to lockdown." *Id.*

- That, after three weeks in lockdown, he told Lieutenant "Bust-a-gut" that he could not walk because the swelling was so bad. Accordingly, he avers that the Lieutenant moved him closer to the cafeteria "as a favor." *Id.* at p. 4.

- That the nurses "would not allow [him] to go into the kitchen without a sock over the

    foot because [his] foot smelled so bad. They told [him] that [he] would spread germs around." *Id.* at p. 5.

- That he sent three letters to the Warden requesting medical treatment but that the Warden took no action. Price avers that he is uncertain whether the letters were delivered to the Warden. *Id.*

- That after he was moved closer to the cafeteria, the foot "was very hot, red, green, black, yellow and swollen and it was changing colors and . . . smelled bad. Blood and other flesh were coming out of [his] foot." *Id.* at p. 6. He also avers that other inmates were complaining of the smell. *Id.*

- That by the time he was referred to a doctor, "flies were buzzing around [his foot] and that . . . [his] toes had burst open and the meat was hanging out." *Id.*

II.    LAW AND ANALYSIS

    A.    **Standard of Review**

Because a ruling on a motion to dismiss involves a case dispositive matter, the Court reviews the magistrate judge's findings, conclusions, and recommendations *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); *Parks v. Collins*, 761 F.2d 1101, 1104 (5th Cir. 1985).

    B.    **Motion to Dismiss**

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). Dismissal cannot be upheld unless it appears beyond doubt that a plaintiff would not be entitled to recover under any set of facts that he could prove in support of his claim. *Id.* While a complaint sought to be dismissed under Federal Rule of Civil 12(b)(6) does not need

detailed factual allegations, a plaintiff must provide more than conclusions or speculations. A formulaic recitation of the elements of a cause of action will not suffice. In other words, the plaintiff must make a showing rather than a blanket assertion of entitlement to relief. *Bell Atlantic v. Twombley*, 550 U.S. 544 (2007).

    C.    **Amended Complaint**

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15. It is proper for district courts to treat new claims raised in response to dispositive motions as motions to amend the pleadings. *See Cash v. Jefferson Assocs., Inc.,* 978 F.2d 217, 218 (5th Cir. 1993); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002)([D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . ."). Moreover, "[g]ranting leave to amend is especially appropriate . . . when the court has dismissed the complaint for failure to state a claim." *Griggs v. Hinds Junior Coll.,* 563 F.2d 179, 180 (5th Cir. 1977).

The Court construes Price's additional affidavit as an implied motion to amend the Complaint and GRANTS that motion.

    D.    **§ 1983 Deliberate Indifference Claim**

To overcome dismissal of his § 1983 claims, Price must state with sufficient particularity that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by engaging in conduct which demonstrates deliberate indifference to his serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991);

6

*Estelle v. Gamble,* 429 U.S. 97 (1976); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

A prison official acts with deliberate indifference:

> only if [ (A) ] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

*Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006)(internal citations and quotations omitted).

Price's affidavit avers facts not alleged in his Complaint, and the new allegations are sufficient to overcome dismissal. Taken as true, a number of Price's additional allegations would amount to deliberate indifference on the part of Defendants. Notably, that (1) the serious condition manifested and the nurses knew about it (they instructed him to place a sock over it because it smelled so bad and would spread germs), but instead of contacting a doctor, the nurses threatened to put Price in lockdown if he continued his requests; (2) the condition was so serious that other inmates complained about the smell, yet a doctor still was not consulted; (3) that the prison staff moved him closer to the kitchen because they knew he was unable to walk, and that the nurses interacted with Price after he was moved; (4) that he sent three letters to the Warden requesting a doctor, after his foot was in a substantially deteriorated condition; (5) that starting in March of 2013, he made routine requests to see a doctor, but that he was not referred to a doctor until the middle of May, 2013; and (6) that a

doctor was not contacted until after the foot had deteriorated to such a degree that it attracted flies.

Upon consideration of the amended Complaint, Price has alleged sufficient facts to overcome dismissal of his § 1983 and other federal claims. The Court, therefore, DECLINES TO ADOPT the Magistrate Judge's Report and Recommendation.

### E.  Qualified Immunity

Defendants raised a qualified immunity defense in their Motion to Dismiss. After finding that there were legally insufficient facts to support a claim for deliberate indifference against the Defendants, the Magistrate Judge determined that Defendants Smith, Lynn, and Warden Lee were entitled to qualified immunity and recommended that Price's claims against them be dismissed with prejudice.

Once an official pleads the defense of qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine issue of material fact as to whether the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor. *Id.* The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the alleged violation. *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009); *Hare v. City of Corinth,* 135 F.3d 32, 325 (5th Cir. 1998).

Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The party seeking to avoid a qualified immunity defense must allege facts sufficient to show that the defendant

either intended to do harm or took an action which, although not intentional, was so likely to produce injury that the harm can be characterized as substantially certain to result. *Douthit v. Jones*, 619 F.2d 527, 533 (5th Cir. 1980).

Reviewing the initial Complaint and subsequent filings thereto, which did not include Price's affidavit [Doc. No. 38, Exh. 1], the Magistrate Judge determined that Smith, Lynn, and Warden Lee were entitled to qualified immunity because their actions were objectively reasonable. The Magistrate Judge reasoned that:

> prior to March, the defendants [did not know] or have reason to know his condition was anything other that athlete's foot. With the benefit of hindsight, it is evident the nurses misdiagnosed his foot condition; however, the reasonableness of a defendant's actions are not considered with the benefit of hindsight. Whether the conduct was substantially certain to result in harm is determined by examining what the defendant knew at the time and until Price's foot began to smell, bleed and cause him pain, no one knew a serious infection existed. Thus, the treatment he received until that time was reasonable under the circumstances as was the treatment he received.

[Doc. No. 27, p. 9].

For the same reasons that Price's § 1983 claim survives dismissal, the amended Complaint contains sufficient allegations that the nurses and Warden Lee's actions and inactions were substantially certain to produce serious injuries to Price. Accordingly, at this stage, these defendants are not entitled to qualified immunity. The Court, therefore, DECLINES TO ADOPT the Magistrate Judge's Report and Recommendation to the extent it recommends that this Court dismiss all federal claims against defendants Smith, Lynn, and Warden Lee with prejudice.

### E. State Law Claims

After recommending that all of Price's federal claims be dismissed, the Magistrate Judge

recommended that the Court dismiss Price's pendent state law claims without prejudice. Once a court dismisses all of the plaintiff's federal claims, it may then decline to exercise supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367(c)(3), and the general rule "is to dismiss any pendent claims." *Bass v. Parkwood Hosp.,* 180 F.3d 234, 246 (5th Cir. 2009). However, considering that Price's amended Complaint contains sufficient facts to overcome dismissal of his federal claims, the Court DECLINES TO ADOPT the Magistrate Judge's recommendation to dismiss Price's pendent state law claims.

### III. CONCLUSION

Upon consideration of the amended Complaint, the Court DECLINES TO ADOPT the entirety of Magistrate Judge's Report and Recommendation [Doc. No. 27] and DENIES Defendants' Motion to Dismiss. [Doc. No. 12].

MONROE, LOUISIANA, this 21st day of October, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE